# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

Tamikah Lynn Weiner and
Jean Carol Hennessey,

                              Plaintiffs,

                                              Civ. No. 04-630 (RHK/JSM)
                                              **MEMORANDUM OPINION**
                                              **AND ORDER**

v.

Officer Todd Lappegard,
individually and in his capacity
as a Minneapolis Police Officer;
Officer Kyle Severson, individually
and in his capacity as a Minneapolis
Police Officer; Officer Mark Durand,
individually and in his capacity as a
Minneapolis Police Officer; Sgt. Wesley
Ostlund, individually and in his capacity
as a Minneapolis Police Officer; Sgt.
Gerald Wallerich, individually and in
his capacity as a Minneapolis Police
Officer; Police Chief Robert Olson, in
his capacity as the Minneapolis Police
Department Chief Policymaker; and the
City of Minneapolis,

                              Defendants.

---

Barry V. Voss and Kara J. Jensen Zitnick, Barry V. Voss, PA, Minneapolis, Minnesota,
for Plaintiffs.

James A. Moore, Assistant City Attorney, Minneapolis, Minnesota, for Defendants.

---

**Introduction**

This case arises out of the arrest of Plaintiffs Tamikah Lynn Weiner and Jean

Carol Hennessey (collectively, "Plaintiffs") by Minneapolis police.  While Plaintiffs were

attending a family gathering, Minneapolis police officers, responding to a noise

complaint, arrived at the scene.  After a confrontation between Plaintiffs and the police,

Plaintiffs were arrested for assault and obstructing legal process.  Plaintiffs have sued

Defendants[1] for, among other things, unlawful arrest and excessive force.  Before the

Court is Defendants' Motion for Summary Judgment.  For the reasons set forth below, the

Court will grant the Motion in part and deny it in part.  As a result, all claims will be

dismissed with prejudice with the exception of Ms. Weiner's unlawful arrest claim.

**Background**

Viewed in a light most favorable to Plaintiffs, the facts are as follows.  On

September 2, 2002, Ms. Weiner and Ms. Hennessey attended a Labor Day barbeque at

Melanie Hervey's Minneapolis residence.  (Moore Aff. C at 4, D at 4.)  Ms. Hervey, who

is not a party to this action, is Ms. Weiner's mother and Ms. Hennessey's daughter.  (Id.)

During the gathering, the guests were listening to music playing from a car stereo.  (Id.)

At about 6:00 P.M., Officers Lappegard and Severson responded to a loud music

---

[1] Defendants are Officer Todd Lappegard, Officer Kyle Severson, Officer Mark
Durand, Sergeant Wesley Ostlund, Sergeant Gerald Wallerich, Police Chief Robert
Olson, and the City of Minneapolis.

complaint.  (Id. Exs. C at 4, D at 4, E at 11.)  The officers drove by the Hervey residence and motioned to the guests to turn the music down.  (Id. Exs. C at 4, F at 17-18.)

A short time later, after receiving a second complaint, the officers returned to the residence and walked into the backyard.  (Id. Exs. C at 4, D at 4, E at 13-15.)  The officers told Ms. Hervey that the music would have to be turned down and advised her that arrests would be made if they had to return.  (Id.)  The music was turned off and Ms. Hervey assured the officers that it would not be turned on again.  (Id.)

As the officers were walking back to their squad cars, a male guest at the gathering (Ms. Weiner's boyfriend) said to another guest, "maybe we should grab the camcorder."  (Id. Ex. D at 4; see id. Exs. E at 15, F at 22.)  Upon hearing this, Officer Severson turned around and said, "That's it.  You're under arrest."[2]  (Id. Ex. E at 16; see id. Exs. G at 14, H at 75.)  The male guest walked into the residence and shut the door.  (Id. Ex. F at 23.)

Both officers ran to the door and began kicking it in.  (Id. Exs. C at 4, D at 4, E at 16-17, F at 23-25.)  The door opened and struck Ms. Weiner's young daughter in the face.[3]  (Id. Exs. C at 4, D at 4, E at 17-18, 20-21.)  Once inside, the officers searched unsuccessfully for the male guest.[4]  (Id. Exs. E at 17-18, 20-21, G at 33.)  As the officers

---

[2] The parties' briefs state that it was Officer Lappegard who told the male guest that he was under arrest (Mem. in Supp. at 3; Mem. in Opp'n at 3), but it appears from the testimony that it was Officer Severson who made this comment (Moore Aff. Exs. E at 16, G at 14, H at 75).

[3] No claims have been brought on her behalf.

[4] The male guest was never arrested.  (Moore Aff. Ex. H at 93-94.)

left, they sprayed mace into the house.  (Id. Exs. E at 21-22, F at 30.)  The officers

testified that a growing crowd of guests were yelling and swearing at them.  (Id. Exs. G at

15, H at 76-78.)  Ms. Weiner conceded that people were angry and yelling.  (Id. Ex. E at

21, 26-27.)

Upset at what was occurring, Ms. Weiner asked the officers what they were doing

and why they were using mace.[5]  (Id. Exs. C at 4, D at 4, E at 23, F at 28.)  Officer

Severson responded by telling Ms. Weiner that she was under arrest and he grabbed her

arm.  (Id. Exs. E at 23, H at 79.)  At nearly the same time, Ms. Weiner's father, who is not

a party to this action, grabbed Ms. Weiner's other arm and said, "You're not arresting my

daughter.  For what?"  (Id. Ex. E at 23; see id. Ex. H at 79.)  Officer Lappegard, who had

come to assist Officer Severson, maced Ms. Weiner and her father.  (Id. Exs. E at 23, H at

80.)  The officers pulled Ms. Weiner's father away and handcuffed him.  (Id. Exs. E at 24,

H at 80.)

Officer Severson and Officer Mark Durand, who had arrived at the scene,

proceeded to arrest Ms. Weiner.  (Id. Exs. E at 25, H at 80-81.)  They twisted her arms

behind her back, kicked her legs out from under her, pushed her onto the ground, and put

her face in the gravel.  (Id. Exs. E at 25-26, F at 35; see id. Ex. H at 81; Zitnick Aff. Ex. B

at 31-32.)  During this time, Ms. Weiner testified that "[e]veryone was . . . still outside in

---

[5] Officer Lappegard testified that Ms. Weiner was yelling and screaming that the
police were violating her rights, and arguing with him and Officer Severson as they were
backing out of the house.  (Moore Aff. Ex. G at 16.)

the backyard" about fifteen feet away from the officers, and that "everyone was yelling" at the officers, saying things like, "What the F [are you] doing." (Moore Aff. Ex. E at 27-28.) Eventually, Ms. Weiner was handcuffed by Sergeant Wesley Ostlund, who had also arrived at the scene. (Id. Ex. E at 25.) She denies resisting arrest.[6] (Id. Ex. E at 26).

In the process of being arrested, Ms. Weiner reopened a cut on her chin (the original wound was caused by a pimple). (Id. at 28, 33-35.) She was allowed to wash her face and she needed no medical attention. (Id.) Ultimately, she was arrested and charged with assault and obstructing legal process, but was later acquitted on both charges in state court.[7]

While the officers were on the ground arresting Ms. Weiner, Ms. Hennessey approached and tried to tell them not to put Ms. Weiner's face in the ground. (Id. Ex. F at 37-38; Zitnick Aff. Ex. E at 297, 309.) But "before [she] could get the words out of [her] mouth," Officer Lappegard maced Ms. Hennessey in the face. (Moore Aff. Ex. C at 5; see id. Ex. F at 38-39.) Then, Officer Durand grabbed her legs, brought her to the ground, pulled her arms behind her back, and held her down with a knee in her back. (Id. Exs. F at 38-40, I at 126.) Officers Durand, Severson, and Lappegard testified that

---

[6] Officer Lappegard testified that Ms. Weiner was swinging her arms and was perhaps kicking as the police grabbed her. (Moore Aff. Ex. G at 16.) Officer Severson testified that she pulled away from police and tried to get away. (Id. Ex. H at 78, 81.)

[7] The Court has not been provided with any documentation of Ms. Weiner's trial, i.e., the criminal complaint, jury instructions, or any trial court findings. At oral argument, however, counsel from both sides informed the Court that Ms. Weiner had been acquitted.

Officer Durand took Ms. Hennessey down because she was kicking him while he was on the ground arresting Ms. Hervey. (Id. Exs. G at 21, H at 81-83, 113-14, I at 125-26.) When asked at her deposition whether she kicked any officer who was on the ground, Ms. Hennessey testified, "Not that I know of." (Id. Ex. F at 39.)

While she was on the ground, Ms. Hennessey was told to give the officers one of her arms, but when she failed to do so, the officers maced her a second time. (Zitnick Aff. Ex. E at 298.) After she was maced, she told the officers that her "back hurt, [so] I couldn't get my arm out." (Id.) Eventually, the officers rolled her over, got her arm out, and put her into handcuffs. (Id.; see Moore Aff. Ex. F at 40.) As a result of the arrest, she exacerbated a pre-existing back problem, suffered cuts and abrasions to her face and knees, and experienced headaches. (Moore Aff. Ex. F at 39-51.) She sought medical attention for her injuries. (Id. Ex. F at 45-55.) Ultimately, Ms. Hennessey was arrested and charged with assault and obstructing legal process; she was convicted of "obstructing legal process without force" in state court.[8] (Moore Aff. Ex. C at 9.)

Stemming from these events, Ms. Hervey and Ms. Hennessey filed a seven-count Complaint in state court, which the Defendants removed to this Court. They allege unlawful arrest in violation of the Fourth and Fourteenth Amendments; excessive force in

---

[8] Again, the Court has not been provided with any documentation of Ms. Hennessey's trial, i.e., the criminal complaint, jury instructions, or any trial court findings. The only evidence pertaining to the outcome of Ms. Hennessey's trial is her interrogatory answer stating that she was convicted of obstructing legal process without force. (Moore Aff. Ex. C at 9.)

violation of the Fourteenth Amendment; abuse of process in violation of the Fifth and

Fourteenth Amendments; common law assault and battery; and negligent retention and

supervision.  The Defendants have moved for summary judgment on each count.

### Standard of Review

Summary judgment is proper if, drawing all reasonable inferences favorable to the

non-moving party, there is no genuine issue as to any material fact and the moving party

is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett,

477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50

(1986).  The moving party bears the burden of showing that the material facts in the case

are undisputed.  See Celotex, 477 U.S. at 322; Mems v. City of St. Paul, Dep't of Fire &

Safety Servs., 224 F.3d 735, 738 (8th Cir. 2000).  The court must view the evidence, and

the inferences that may be reasonably drawn from it, in the light most favorable to the

nonmoving party.  See Graves v. Arkansas Dep't of Fin. & Admin., 229 F.3d 721, 723

(8th Cir. 2000); Calvit v. Minneapolis Pub. Schs., 122 F.3d 1112, 1116 (8th Cir. 1997).

The nonmoving party may not rest on mere allegations or denials, but must show through

the presentation of admissible evidence that specific facts exist creating a genuine issue

for trial.  See Anderson, 477 U.S. at 256; Krenik v. County of Le Sueur, 47 F.3d 953, 957

(8th Cir. 1995).

**Analysis**

**I.**    **Unlawful Arrest and Excessive Force Claims**

Plaintiffs allege that they were unlawfully arrested and that the officers used

excessive force during the arrests.  The officers respond that they are entitled to qualified

immunity for their actions.  Qualified immunity is an entitlement not to stand trial or face

other burdens of litigation.  Saucier v. Katz, 533 U.S. 194, 200 (2001).  "The privilege is

an immunity from suit rather than a mere defense to liability; and like an absolute

immunity, it is effectively lost if a case is erroneously permitted to go to trial."  Id. at 200-

01 (citation and internal quotations omitted) (emphasis in original).  As a result, the

Supreme Court has "repeatedly . . . stressed the importance of resolving immunity

questions at the earliest possible stage in litigation."  Id. at 201 (citation and internal

quotations omitted).

Under the qualified immunity doctrine, state actors are protected from civil

liability when their actions do not violate clearly established constitutional rights of which

a reasonable person would have known.  Kuha v. City of Minnetonka, 365 F.3d 590, 601

(8th Cir. 2003) (amended opinion).  On summary judgment, courts ask two questions to

determine whether qualified immunity is appropriate.  The first is whether, when viewed

in the light most favorable to the party asserting the injury, the facts alleged show that the

officers' conduct violated a constitutional right.  Id.; see Saucier, 533 U.S. at 201.  If no

constitutional right has been violated, there is no necessity for further inquiries

concerning qualified immunity.  Saucier, 533 U.S. at 201.

However, if the court finds that a constitutional right has been violated, it then asks

whether the right was clearly established in light of the specific context of the case.

Kuha, 365 F.3d at 601; see Saucier, 533 U.S. at 201.  For a right to be clearly established,

the contours of the right must be sufficiently clear that a reasonable officer would

understand that what he is doing violates that right.  Kuha, 365 F.3d at 601.  This second

step of the qualified immunity inquiry shields officers from suit "if their conduct was

objectively legally reasonable in light of the information they possessed at the time of the

alleged violation."  Id.  In other words, "if the officers' mistake as to what conduct the

law required is reasonable, they are entitled to the immunity defense."  Id. at 602 (citing

Saucier, 583 U.S. at 205).

Whether a given set of facts entitles the official to summary judgment on qualified

immunity grounds is a question of law.  Greiner v. City of Champlin, 27 F.3d 1346, 1352

(8th Cir. 1994).  But if there is a genuine dispute concerning predicate facts material to

the qualified immunity issue, there can be no summary judgment.  Id.; see Lambert v.

City of Dumas, 187 F.3d 931, 935 (8th Cir. 1999).

### A.      Unlawful Arrest

The Fourth Amendment prohibits arrests without probable cause.  See, e.g. Hill v. Scott, 349 F.3d 1068, 1072 (8th Cir. 2003).  In reviewing an allegation that probable cause was lacking to make an arrest, courts consider

> whether the totality of facts based on reasonably trustworthy information would justify a prudent person in believing the individual arrested had committed . . . an offense.  Probable cause is to be assessed in terms of the circumstances confronting a reasonably cautious police officer at the time of the arrest, and the arresting officer is entitled to consider the circumstances, including arguably innocent conduct, in light of his training and experience.  The probability, and not a prima facie showing, of criminal activity is the standard of probable cause.

Gorra v. Hanson, 880 F.2d 95, 97 (8th Cir. 1989) (citation, internal quotations, and alterations omitted); see Smithson v. Aldrich, 235 F.3d 1058, 1062 (8th Cir. 2000). Qualified immunity protects law enforcement officers in circumstances in which they reasonably but mistakenly conclude probable cause is present.  Gorra, 880 F.2d at 97. Thus, "the issue is not probable cause in fact, but arguable probable cause."  Id. (citation and internal quotations omitted).

Both Plaintiffs were arrested for and charged with obstructing legal process; Ms. Weiner was acquitted, while Ms. Hennessey was convicted.  The statute under which Plaintiffs were charged provides, in part:

> Whoever intentionally does any of the following may be sentenced as provided in subdivision 2:
> (1) obstructs, hinders, or prevents the lawful execution of any legal process, civil or criminal, or apprehension of another on a charge or conviction of a criminal offense; [or]

> (2) obstructs, resists, or interferes with a peace officer while the officer is engaged in the performance of official duties[.]

Minn. Stat. § 609.50, subd. 1(1), (2).[9]  While the statute is broadly drafted, the Minnesota Supreme Court has narrowly construed it.  See State v. Krawsky, 426 N.W.2d 875, 877 (Minn. 1988); see also State v. Tomlin, 622 N.W.2d 546, 548 (Minn. 2001) (noting that the statute has been "narrowly construed").  Krawsky held that the statute criminalizes only "a particular kind of physical act, namely, physically obstructing or interfering with an officer."  426 N.W.2d at 877.  Thus, the law does not criminalize "ordinary verbal criticism directed at a police officer even while the officer is performing his official duties" or "the mere act of interrupting an officer, even intentionally."  Id. at 878.  However, "in limited circumstances," "words, such as fighting words, that have the effect of physically obstructing or interfering with an officer conducting an investigation" may fall within the statute's ambit.  Tomlin, 622 N.W.2d at 548; see Krawsky, 426 N.W.2d at 877.

---

[9] Subdivision 2 sets out a range of sentences depending on the offender's conduct. Generally, the stiffest sentences are for those who knew or had reason to know that their conduct created a risk of death, substantial bodily harm, or serious property damage. Minn. Stat. § 609.50, subd. 2(1).  Relatively lesser sentences are for those whose conduct was "accompanied by force or violence or the threat thereof."  See id. § 609.50, subd. 2(2).  Finally, the least severe sentences are warranted "in other cases" of obstruction. See id. § 609.50, subd. 2(3).

### 1.    Ms. Weiner's Unlawful Arrest Claim

The Court finds that genuine issues of material fact exist as to whether the officers possessed arguable probable cause to arrest Ms. Weiner for obstructing legal process.[10] When viewed in a light most favorable to Ms. Weiner, the record shows that she merely approached the officers and asked them what they were doing at the residence and asked why they were using mace.  Under this version of the facts, Ms. Weiner did not physically obstruct or interfere with the officers, nor did she use "fighting words" or words that would have had the effect of physically obstructing or interfering with the officers.  See Krawsky, 426 N.W.2d at 877.  Rather, she engaged in ordinary verbal criticism which does not violate the law.  See id.  Under these circumstances, no reasonable officer would be justified in believing that Ms. Weiner had committed an offense.  While the officers' version of events differs, the factual dispute presents an issue for trial.  See Gainor v. Rogers, 973 F.2d 1379, 1387 (8th Cir. 1992).  Accordingly, the Court will deny Defendants' Motion with respect to Ms. Weiner's unlawful arrest claim.[11]

---

[10] Although Ms. Weiner was also arrested for assault, Defendants make no argument that arguable probable cause existed to arrest her on that basis.  Rather, their brief addresses only the arguable probable cause to arrest her for "interference."  (Mem. in Supp. at 13.)

[11] Defendants do not argue that Ms. Weiner is collaterally estopped from asserting her unlawful arrest claim, and they have provided no evidence demonstrating that the state court made a probable cause determination on Ms. Weiner's arrest.  See Crumley v. City of St. Paul, 324 F.3d 1003, 1007 (8th Cir. 2003) (finding that the "state court conclusion that there was probable cause to arrest [plaintiff] collaterally estopped a contrary ruling in [plaintiff's]" Fourth Amendment action, even though the plaintiff was subsequently acquitted for the crime for which she was arrested).

12

### 2. Ms. Hennessey's Unlawful Arrest Claim

The Court reaches a different conclusion with respect to Ms. Hennessey's unlawful arrest claim. Unlike Ms. Weiner, Ms. Hennessey was convicted of obstructing legal process without force resulting from her arrest. (Moore Aff. Ex. C at 9.) The Eighth Circuit has held that an arrestee's conviction for the underlying offense is a complete defense to a civil rights claim that the arrest was without probable cause. See Malady v. Crunk, 902 F.2d 10, 11-12 (8th Cir. 1990). Accordingly, the Court will grant Defendants' Motion with respect to Ms. Hennessey's unlawful arrest claim.

### B. Excessive Force

The Fourth Amendment also prohibits arrests carried out by excessive force. See Crumley v. City of St. Paul, 324 F.3d 1003, 1007 (8th Cir. 2003). Excessive force claims are analyzed under the Fourth Amendment's "objective reasonableness standard." Saucier, 533 U.S. at 204 (quoting Graham v. Connor, 490 U.S. 386, 388 (1989)). However, the objective reasonableness standard "is not capable of precise definition or mechanical application." Graham, 490 U.S. at 396 (citation and internal quotation omitted). Rather, the "proper application [of the objective reasonableness standard] requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. (citation omitted). In addition to these facts and

circumstances, courts also consider the result of the force. See Crumley, 324 F.3d at

1007 (citing cases).

"The calculus of reasonableness must embody allowance for the fact that police

officers are often forced to make split-second judgments—in circumstances that are tense,

uncertain, and rapidly evolving—about the amount of force that is necessary in a

particular situation." Graham, 490 U.S. at 396-97. Accordingly, "the reasonableness of

the officer's belief as to the appropriate level of force should be judged from that on-

scene perspective." Saucier, 533 U.S. at 205 (citation omitted). "Not every push or

shove, even if it may later seem unnecessary in the peace of a judge's chambers . . .

violates the Fourth Amendment." Graham, 490 U.S. at 396 (citation and internal

quotations omitted). As such, the reasonableness of a particular use of force "must be

judged from the perspective of a reasonable officer on the scene, rather than with the

20/20 vision of hindsight." Id. (citation omitted).

In addition to evaluating an officer's conduct under the objective reasonableness

standard, "[t]he qualified immunity inquiry . . . has a further dimension." Saucier, 533

U.S. at 205. The Supreme Court has noted that

> [t]he concern of the immunity inquiry is to acknowledge that reasonable
> mistakes can be made as to the legal constraints on particular police
> conduct. It is sometimes difficult for an officer to determine how the
> relevant legal doctrine, here excessive force, will apply to the factual
> situation the officer confronts. An officer might correctly perceive all of
> the relevant facts but have a mistaken understanding as to whether a
> particular amount of force is legal in those circumstances. If the officer's
> mistake as to what the law requires is reasonable, however, the officer is
> entitled to the immunity defense.

14

Id.  Qualified immunity operates, therefore, "to protect officers from the sometimes hazy border between excessive and acceptable force . . . and to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful." Id. at 206 (internal citation and quotations omitted).  Thus, "in addition to the deference officers receive on the underlying constitutional claim, qualified immunity can apply in the event the mistaken belief was reasonable." Id.

### 1.   Ms. Weiner's Excessive Force Claim

#### a.   Constitutional Violation?

The record shows that during Ms. Weiner's arrest, Officer Severson grabbed one of her arms and Ms. Weiner's father grabbed her other arm, saying "[y]ou're not arresting my daughter."  After Ms. Weiner's father was pulled away, Officers Severson and Durand placed Ms. Weiner under arrest by twisting her arms behind her back, kicking her legs out from under her, pushing her to the ground and her face in the gravel, and handcuffing her.  During the arrest, "everyone was yelling" at the officers from a distance of about fifteen feet away.  As a result of her arrest, Ms. Weiner reopened a cut on her chin but she needed no medical attention.

The Court finds that under the circumstances presented, no reasonable jury could find that the officers used excessive force in effecting Ms. Weiner's arrest.[12]  By all

---

[12] As Plaintiffs recognize (see Mem. in Opp'n at 18), the lack of arguable probable cause to arrest Ms. Weiner is irrelevant to the objective reasonableness of the force used to effect her arrest, see Habiger v. City of Fargo, 80 F.3d 289, 298 n.8 (8th Cir. 1996) ("[T]he objective reasonableness of the use of force does not depend on whether the arrest

accounts, the scene was chaotic and the officers had to make quick judgments about how much force to use under circumstances that were tense, uncertain, and rapidly evolving. Under such circumstances, a reasonable officer could have determined that Ms. Weiner was actively resisting arrest.  When Officer Severson grabbed Ms. Weiner's arm during the arrest, Ms. Weiner's father grabbed her other arm and told the officers, "You're not arresting my daughter."  While Ms. Weiner denies resisting arrest, the officers had no way of knowing whether she, her father, or both were resisting—all they knew was that Ms. Weiner was not submitting to the arrest.  Although Ms. Weiner may have had no control over her father grabbing her arm, the situation nonetheless constituted resistence which justifies the use of greater force.  See Crumley, 324 F.3d at 1008.

Furthermore, a reasonable officer could have concluded that Ms. Weiner and her father posed an immediate threat to officer safety and the safety of others.  Here, the officers were engaged in a human "tug-of-war" that could have led to someone being seriously injured.  Given this unpredictable situation, they were reasonably wary of what could come next and reasonably concerned about safety.  In addition, by Ms. Weiner's own account, the officers had to contend with a group of people yelling things like "What the F [are you] doing" from about fifteen feet away.  The officers' need to use force in making a swift arrest is magnified when they are surrounded by a hostile crowd.  See

---

was based on actual or arguable probable cause.").

Spoo v. Maciejewski, 2004 WL 2457859, at *7 (D. Minn. Oct. 14, 2004) (Rosenbaum, C.J.)

Finally, Ms. Weiner's only injury was a reopened cut on her chin and she did not require any medical attention. Although the Eighth Circuit has specifically rejected a "significant injury" requirement in excessive force cases, see Lambert, 187 F.3d at 936, Ms. Weiner's relatively minor injury suggests that the force used was reasonable, see Crumley, 324 F.3d at 1008; Greiner, 27 F.3d at 1355; Foster v. Metro. Airports Comm'n, 914 F.2d 1076, 1082 (8th Cir. 1990).

In support of her excessive force claim, Ms. Hervey relies on four cases: Dixon v. Richer, 922 F.2d 1456 (10th Cir. 1991); Gainor v. Rogers, 973 F.2d 1379 (8th Cir. 1992); Kelly v. Bender, 23 F.3d 1328 (8th Cir. 1994); and Smith v. City of Hemet, 394 F.3d 689 (9th Cir. 2005). But in none of these cases were officers contending with an arrestee who was being pulled away from them by another person while a hostile crowd was yelling at them from only a short distance away.

In sum, considering the fluid situation confronting the officers, see Graham, 490 U.S. at 396-97, the force used in arresting Ms. Weiner was not objectively unreasonable. Accordingly, because Ms. Weiner has not established a constitutional violation, the Court will grant Defendants' Motion with respect to her excessive force claim.

b.      Clearly Established?

Had Ms. Weiner shown a violation of a constitutional right, the right was not clearly established in light of the specific context of this case. See Kuha, 365 F.3d at 601.

17

For a right to be clearly established, the contours of the right must be sufficiently clear that a reasonable officer would understand that what he is doing violates that right.  Id. This second step of the qualified immunity inquiry shields officers from suit "if their conduct was objectively legally reasonable in light of the information they possessed at the time of the alleged violation." Id. (citation omitted).  In other words, "if the officers' mistake as to what conduct the law required is reasonable, they are entitled to the immunity defense." Id. at 602 (citing Saucier, 533 U.S. at 205).

Under the circumstances presented to the officers, they had no "fair warning" that their conduct, especially in light of Ms. Hervey's father's attempt to prevent them from taking Ms. Weiner into custody, was unconstitutional.  See Hope v. Pelzer, 536 U.S. 730, 739 (2002) (stating that the salient question is whether the state of the law at the time gave officers "fair warning" that their alleged conduct was unconstitutional).  The qualified immunity inquiry acknowledges that reasonable mistakes can be made as to the legal constraints on particular police conduct.  See Saucier, 533 U.S. at 205.  If an officer makes a reasonable mistake as to what the law requires, then that officer is entitled to qualified immunity from suit.  Id.  Here, the officers at least made a reasonable mistake as to how the law regarding excessive force would apply to the factual situation with which they were confronted.  Thus, they are entitled to qualified immunity.  Id.

### 2.      Ms. Hennessey's Excessive Force Claim

a.      Constitutional Violation?

The record shows that while the officers were on the ground arresting Ms. Weiner, Ms. Hennessey approached and tried to talk to the officers.  But before she was able to say anything, she was maced, grabbed by her legs, brought to the ground, had her arms pulled behind her back, and held down with a knee in the back.  She was maced again after she did not give her arm to the officers when directed.  She was then handcuffed.  As a result, Ms. Hennessey exacerbated a pre-existing back injury, suffered cuts and abrasions to her face and knees, and experienced headaches.  She had medical attention afterwards.

The Court finds that under the circumstances presented, no reasonable jury could find that the officers used excessive force in carrying out Ms. Hennessey's arrest.  It bears repeating that the officers were forced to make a split-second judgment—in unstable circumstances—about the amount of force that was necessary in dealing with Ms. Hennessey.  See Graham, 490 U.S. at 396-97.  By all accounts, the scene was chaotic and the uncertain circumstances "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  Id. at 396.

From such a perspective, a reasonable officer on the scene could have legitimately feared for his immediate safety when Ms. Hennessey approached.  "[O]fficer safety is paramount," Kuha, 365 F.3d at 599, and the officers were in a particularly vulnerable position when Ms. Hennessey walked up to them—they were on the ground in the process of arresting Ms. Weiner.  From the "on-scene" perspective of the officers, they had no way of knowing whether she was going to attempt to pull Ms. Weiner away as

Ms. Weiner's father had done, whether she possessed a weapon, or whether, as it turned out, she was just going to talk to them.  Simply put, the officers had no way of knowing what Ms. Hennessey's true intentions were at the time.

Moreover, a reasonable officer could have concluded that Ms. Hennessey was actively resisting arrest when she failed to give the officers her arm when directed.[13]  In the rapidly evolving events, the officers had no way of knowing at that point why she could not give them her arm.  The application of a second round of mace, under these circumstances, cannot be viewed as unreasonable.

Furthermore, as noted above, the officers were contending with a group of bystanders who were yelling at them from about fifteen feet away.  As with the arrest of Ms. Weiner, the officers' need to use force in making a swift arrest of Ms. Hennessey is magnified when the officers are surrounded by a hostile crowd.  See Spoo, 2004 WL 2457859, at *7.

Finally, while her injuries were more severe than Ms. Weiner's injuries, Ms. Hennessey's injures were relatively minor—an exacerbated pre-existing back injury, cuts and abrasions to her face and knees, and headaches.  Although these injuries are not insignificant, see Lambert, 187 F.3d at 936, and would not alone warrant a finding that the officers' use of force was reasonable, considering the overall circumstances of her

---

[13] Ms Hennessey testified that she was unable to comply because her back hurt, but this was not known to the arresting officers until after the second round of mace was applied.  (See Zitnick Aff. Ex. E. at 298.)

arrest, Ms. Hennessey's relatively minor injuries suggest that the force used was reasonable, see Crumley, 324 F.3d at 1008; Greiner, 27 F.3d at 1355; Foster, 914 F.2d at 1082.

Like Ms. Weiner, Ms. Hennessey also relies on Dixon, Gainor, Kelly, and Smith in support of her excessive force claim. But in none of these cases were officers contending with someone who was approaching them with unknown intentions during an arrest, while an angry group of people was shouting at them in close proximity.

In sum, given the volatile scene the officers encountered, see Graham, 490 U.S. at 396-97, the force used in arresting Ms. Hennessey was not objectively unreasonable. Accordingly, because Ms. Hennessey has not established a constitutional violation, the Court will grant Defendants' Motion with respect to her excessive force claim.

b.      Clearly Established?

Had Ms. Hennessey shown a violation of a constitutional right, the right was not

clearly established in light of the specific context of this case.  See Kuha, 365 F.3d at 601.

Here, the officers at least made a reasonable mistake as to how the law regarding

excessive force would apply to the factual situation with which they were

confronted—especially in light of the officers' not knowing Ms. Hennessey's intentions

and the vulnerable position they were in when she approached.  As such, they are entitled

to qualified immunity from suit.  See Saucier, 533 U.S. at 205.  Accordingly, qualified

immunity operates in this case "to protect officers from the sometimes hazy border

between excessive and acceptable force . . . and to ensure that before they are subjected to

suit, officers are on notice that their conduct is unlawful."  Id. at 206 (internal citation and

quotations omitted); see Davis v. Hall, 375 F.3d 703, 712 (8th Cir. 2004) ("Officials are

not liable for bad guesses in gray areas; they are liable for transgressing bright lines.").

## II.    Abuse of Process Claim

Plaintiffs next allege that the officers' conduct was an abuse of due process in

violation of the Fifth and Fourteenth Amendments.  But because Plaintiffs have not

addressed this claim in their responsive memorandum, the Court will dismiss it as waived.

Graham v. Rosemount, Inc., 40 F. Supp. 2d 1093, 1101 (D. Minn. 1999).  In any event, to

the extent Plaintiffs raise excessive force claims under the Fifth and Fourteenth

Amendments, those claims are meritless because "all claims that law enforcement officers

have used excessive force . . . in the course of an arrest . . . should be analyzed under the

Fourth Amendment and its 'reasonableness' standard," Graham, 490 U.S. at 395

(emphasis in original), and, as discussed above, their claims fail under the Fourth

Amendment.

## III.    Assault and Battery

Plaintiffs also allege claims of common law assault and battery.  An assault is an

unlawful threat to do bodily harm to another with the present ability to carry out the

threat.  Dahlin v. Fraser, 288 N.W. 851, 852 (Minn. 1939).  A battery is an intentional

unpermitted offensive contact with another.  Paradise v. City of Minneapolis, 297 N.W.2d

152, 155 (Minn. 1980).  Although Plaintiffs' Complaint refers to the tort of assault as well

as that of battery, it is apparent that the essence of their claims is based on battery.

Indeed, the damages allegedly sustained resulted from the actual contact the officers had

with Plaintiffs, and not from Plaintiffs' fear that they might be harmed.  Thus, only the

battery claim will be discussed.  See Paradise, 297 N.W.2d at 155 n.3.

With respect to the battery claim, Minnesota law provides that "only the use of

excessive force by a police officer will constitute a battery."  Johnson v. Peterson, 358

N.W.2d 484, 485 (Minn. Ct. App. 1984) (citing Paradise, 297 N.W.2d at 155) (emphasis

in original).  Because the Court has determined that Plaintiffs have failed to establish that

the officers used excessive force, Plaintiffs' battery claims fail.  Accordingly, the Court

will grant Defendants' Motion with respect to Plaintiffs' assault and battery claims.[14]

---

[14] Given this conclusion, the Court need not address Defendants' claim of official
immunity to the assault and battery allegations.

**IV.**      **Negligent Hiring and Negligent Retention**

Finally, Plaintiffs allege that the City of Minneapolis and its chief of police

negligently hired and negligently retained the officers who arrested them.  But because

Plaintiffs have not addressed this claim in their responsive memorandum, the Court will

dismiss it as waived.  <u>Graham</u>, 40 F. Supp. 2d at 1101.  In any event, the City and its chief

of police are entitled to discretionary immunity from these claims pursuant to Minn. Stat.

§ 466.03, subd. 6, which establishes that a municipality is immune from tort liability for

"[a]ny claim based upon the performance or the failure to exercise or perform a

discretionary function or duty, whether or not the discretion is abused."  <u>See</u> <u>Watson v.</u>

<u>Metro. Transit Comm'n</u>, 553 N.W.2d 406, 412-13 (Minn. 1996); <u>Maras v. City of</u>

<u>Brainerd</u>, 502 N.W.2d 69, 78 (Minn. Ct. App. 1993).

**Conclusion**

Based on the foregoing, and all of the files, records, and proceedings herein, **IT IS**

**ORDERED** that Defendants' Motion for Summary Judgment (Doc. No. 16) is

**GRANTED IN PART AND DENIED IN PART** and all claims contained in Plaintiffs'

Complaint are **DISMISSED WITH PREJUDICE**, **<u>with the exception</u>** of Plaintiff

Weiner's unlawful arrest claim, which will proceed to trial.


Dated: May 16, 2005                                       s/Richard H. Kyle
                                                          RICHARD H. KYLE
                                                          United States District Judge